IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

EDWARD SLAYMAN, DENNIS
McHENRY, and JEREMY BRINKER,
individually and on behalf of all others          No. 3:05-cv-1127-HZ (Lead Case)
similarly situated,                               No. 3:07-cv-818-HZ (Trailing Case)

                    Plaintiffs,

        v.

                                                  OPINION & ORDER

FEDEX GROUND PACKAGE
SYSTEM, INC.,

                    Defendant.


Steve D. Larson
Mark A. Friel
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Fifth Floor
Portland, Oregon 97204

/ / /

/ / /


1 - OPINION & ORDER

Jordan M. Lewis
KELLEY/UUSTAL LAW FIRM
Courthouse Law Plaza
700 SW 3rd Avenue, 3rd Floor
Fort Lauderdale, Florida 33316

      Attorneys for Plaintiffs

Robert C. Weaver
Eryn K. Hoerster
GARVEY SCHUBERT BARER
121 S.W. Morrison Street, 11th Floor
Portland, Oregon 97204

Guy P. Michelson
Emily J. Brubaker
Christian N. Dimock
COOR CRONIN MICHELSON BAUMGARDNER & PREECE LLP
1001 S.W. Fourth Avenue, Suite 3900
Seattle, Washington 98154

      Attorneys for Defendant

HERNANDEZ, District Judge:

Following remand of these cases to this Court from the Multi-District Litigation (MDL)

Court in the Northern District of Indiana, the only remaining claims are for rescission.

Defendant moves for summary judgment.  Plaintiffs move for partial summary judgment on the

issue of liability.  I grant defendant's motion and deny plaintiffs' motion as moot.

## BACKGROUND

Three plaintiffs in the Slayman case and two in the Leighter case filed these actions as

putative class actions, asserting generally that despite the package delivery contracts they signed

with defendant which established an independent contractor relationship between the parties,

defendant exercised a level of control over the drivers inconsistent with that relationship and

2 - OPINION & ORDER

instead, treated them as employees.  The operative Complaints in the cases raised the following

overlapping claims:  (1) illegal deductions from wages under Oregon Revised Statute § (O.R.S.)

652.610; (2) rescission of the operating agreement; and (3) declaratory relief.  Slayman Third

Am. Compl.; Leighter Compl.  Additionally, the Slayman plaintiffs brought a claim for fraud,

and the Leighter plaintiffs brought a claim for injunctive relief, a claim for violation of Oregon

wage and hour laws regarding overtime, and a claim for penalty wages under O.R.S. 652.140 for

failure to timely pay wages upon termination.  Id.

The Slayman case was transferred to the MDL Court on July 20, 2005, and the Leighter

case was transferred there on July 16, 2007.  The MDL Court adjudicated the class certification

issues and then, on summary judgment, resolved substantive liability issues regarding the nature

of the relationship between the drivers and defendant, first as to a case arising under Kansas law,

then as to cases arising from all over the country.  In re FedEx Ground Package Sys., Inc. Emp't

Practices Litig., 758 F. Supp. 2d 638 (N.D. Ind. 2010) (summary judgment decision in all cases);

734 F. Supp. 2d 557 (N.D. Ind. 2010) (summary judgment decision in Kansas case); 662 F. Supp.

2d 1069, 1104 (class certification decision in various cases, including Leighter and on rescission

claim in Slayman); 273 F.R.D. 424, 475 (N.D. Ind. 2008) (class certification decision in various

cases, including Slayman).

Class certification was not granted on the rescission claim in either case.  662 F. Supp. 2d

at 1104-07.  On May 27, 2011, the Joint Panel on Multi-District Litigation issued an order

remanding the two cases to this Court, including the certified claims which were resolved on

summary judgment, and the remaining rescission claims of the five plaintiffs.

Because the MDL Court's opinions contain detailed background facts regarding the

3 - OPINION & ORDER

relationship between the drivers and defendant and because I agree with defendant that the

rescission claims are barred by not being promptly asserted, I need not repeat the background

information here.  Facts relevant to my conclusion are discussed below.

STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The

moving party bears the initial responsibility of informing the court of the basis of its motion, and

identifying those portions of "'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence

of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting

Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine

issue of material fact, the burden then shifts to the nonmoving party to present "specific facts"

showing a "genuine issue for trial."  Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28

(9th Cir. 2009) (internal quotation omitted).  The nonmoving party must go beyond the pleadings

and designate facts showing an issue for trial.  Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material.  Suever v.

Connell, 579 F.3d 1047, 1056 (9th Cir. 2009).  The court views inferences drawn from the facts

in the light most favorable to the nonmoving party and draws all reasonable inferences in that

party's favor.  Long v. City & County of Honolulu, 511 F.3d 901, 905 (9th Cir. 2007).

If the factual context makes the nonmoving party's claim as to the existence of a material

issue of fact implausible, that party must come forward with more persuasive evidence to support

4 - OPINION & ORDER

his claim than would otherwise be necessary.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

DISCUSSION

Plaintiffs in the two cases raise virtually identical rescission claims and allege that (1) despite the express terms of the Operating Agreements (OA), plaintiffs' relationship with defendant satisfies every aspect of the test for employment, and not for independent contractor status; (2) defendant controls virtually every aspect of the plaintiffs' work and earnings; (3) defendant mischaracterizes plaintiffs as independent contractors and as a result, plaintiffs must pay substantial sums of their own money for work-related expenses, including but not limited to, the purchase or lease of the vehicles meeting company specifications, and all costs of operating, insuring, and maintaining those vehicles; (4) the OA illegally and unfairly advantages defendant by mischaracterizing the status of plaintiffs in that defendant evades employment-related obligations such as social security contributions, workers' compensation coverage, and state disability and unemployment compensation, illegally shifting these expenses to plaintiffs; and (5) the OAs between defendant and plaintiffs are void as against public policy and are therefore unenforceable, for failure to recognize the employment status of plaintiffs and denying them the legally cognizable benefits of employment.  Slayman Third Am. Compl. at ¶¶ 40-45; Leighter Compl. at ¶¶ 35-40.

Defendant argues that it is entitled to summary judgment because plaintiffs failed to bring the rescission claims promptly, the contracts no longer exist, and the terms of the contracts have been fully performed.  Because I agree with defendant on the promptness issue, I decline to address defendant's alternative arguments.

5 - OPINION & ORDER

The goal of rescission is to restore the parties to the *status quo ante*. See Jones v. McGinn, 70 Or. 236, 240, 140 P. 994, 996 (1914) ("Rescission means that both parties shall be wholly released from the contract as though it had not been made"); Sweeney v. SMC Corp., 178 Or. App. 576, 588, 37 P.3d 244, 251 (2002) ("In traditional terms, rescission places the parties in the positions that they occupied before the transaction occurred; damages, in contrast, make a plaintiff whole for harm that the plaintiff has suffered"); White v. Burt, 114 Or. App. 476, 479, 835 P.2d 946, 948 (1992) ("permissibility of rescission generally depends on the restoration of the *status quo ante*").

Oregon cases recognize the right to rescind a contract upon a showing of fraud, misrepresentation, or mistake. Generaux v. Dobyns, 205 Or. App. 183, 194, 134 P.3d 983, 989 (2006) ("Mistake, like fraud, is a well-recognized equitable ground for rescission of a contract or other instrument"); Lesher v. Strid, 165 Or. App. 34, 41, 996 P.2d 988, 993 (2000) (rescission may be based on mutual mistake or innocent misrepresentation); see also Venture Props., Inc. v. Parker, 223 Or. App. 321, 349, 195 P.3d 470, 487 (2008) ("Rescission is a potential remedy for various harms"). Oregon also recognizes the right to rescind a contract which is void as against public policy. W. J. Seufert Land Co. v. Greenfield, 262 Or. 83, 87, 496 P.2d 197, 199 (1972).

Here, plaintiffs' rescission claims, as indicated above, are based on the theory that the contracts are void by violating public policy. The parties do not dispute that under Oregon law, for rescission claims based on fraud, misrepresentation, or mistake, the party seeking rescission must act promptly. E.g., First W. Mortg. Co. v. Hotel Gearhart, Inc., 260 Or. 196, 202, 488 P.2d 450, 453 (1971). The promptness requirement is sometimes expressed as an "election" to continue the contractual obligation or to disaffirm it, and is sometimes expressed as a "waiver."

6 - OPINION & ORDER

See Brown v. Hassenstab, 212 Or. 246, 256, 319 P.2d 929, 934 (1957) (a party induced to enter a contract by fraud, misrepresentation, or mistake "has an election either to continue the obligation or to disaffirm it" and because the "two courses of action are inconsistent[,] the taking of one will preclude the other"; the "would-be plaintiff must make his election with reasonable promptness"); Eivers v. Peard, 100 Or. 197, 206-07, 197 P. 264, 267 (1921) (party induced to enter contract by fraud, false representations, or mistake must act with reasonable promptness in electing whether to affirm it in order to avoid injury to the other party or intervening interests of third persons); McCourt v. Johns, 33 Or. 561, 569, 53 P. 601, 603-04 (1889) ("When cause exists for rescission, the law requires the party seeking to take advantage of it to act without delay, so that the other party to the contract may be placed as nearly in statu quo as possible; and a nonobservance of the rule will generally constitute a waiver of the right to rescind"); Gearhart v. Goehner, 74 Or. App. 95, 101, 701 P.2d 461, 465 (1985) (describing the issue as "whether defendant waived his right to assert his claim by failing to rescind the contract promptly").

Three federal district courts have recently dismissed rescission claims in identical FedEx cases on the basis of unreasonable delay.  In Debnam v. FedEx Home Delivery, the District of Massachusetts granted the defendant's motion to dismiss a rescission claim, identical to the claims raised here, because the plaintiff waited several years to bring the claim.  The court explained:

> The rescission claim . . . is based on the alleged misclassification of the plaintiff as an independent contractor, causing him to incur costs he would not have if he were considered an employee and to miss out on the benefits of employment, which the plaintiff contends makes the Agreement void as against public policy . . . .
> Additionally, as an equitable remedy, actions for rescission must be brought with "reasonable promptness."  Elias Bros. Rests., Inc. v. Acorn Enters.,

7 - OPINION & ORDER

Inc. 831 F. Supp. 920, 927 (D. Mass. 1993).  The plaintiff's allegations, . . . , stem
from the initial contract formation in 2004 and the overall terms of his
relationship with the defendant since then.  Having had knowledge of the
circumstances and having reaped the benefits of the Agreement since 2004, it
cannot be said that the plaintiff has brought his claim for rescission with
reasonable promptness.

Debnam, No. 10-11025-GAO, 2011 WL 1188437, at *2 (D. Mass. Mar. 31, 2011).

In a District of Maine case, the court reached the same conclusion.  Scovil v. FedEx

Ground Package Sys., Inc., No. 1:10-cv-515-DBH, 2011 WL 2968350, at * 1 (D. Me. July 21,

2011).  The court granted the defendant's motion to dismiss the rescission claim because it had

not been brought within a reasonable time:

Under Maine law, as an equitable remedy an action for rescission is only available
if brought within a "reasonable time" after discovery of the facts justifying it. . . .
Where the facts are undisputed, however, the Maine Law Court has said that [the
question of reasonableness] is a question of law.

The drivers argue that determining the timeliness of their rescission claim
is premature because the factual record has not yet been developed. . . . If there
was a dispute over when the drivers discovered the factual grounds for their
rescission claim, this argument would have merit.  Here, however, the drivers
have not alleged any facts that would support a finding that the rescission claim
was brought within a reasonable period of time.

The drivers allege in their Complaint that they signed contracts with
FedEx between 1998 and February 2008. . . . The factual basis for their rescission
claim - that the contracts misclassified them as independent contractors, when in
fact, FedEx treated them as employees- must have been known to the drivers
when they signed these contracts or shortly after they began working as delivery
drivers for FedEx.  The drivers brought this lawsuit in December 2010.  As a
matter of law, that is too long.

Id. at *1 (citations to the record omitted; citing cases holding that 6.5 years, 2.5 years, and 2

months were unreasonably long periods of time).

Finally, in Currithers v. FedEx Ground Package Sys., Inc., No. 04-10055, 2012 U.S. Dist.

Lexis 16070 (E.D. Mich. Feb. 9, 2012), the plaintiffs sought rescission because the OAs violated public policy, they were illegal, or there was fraud in the inducement.  Id. at *4.  The court explained that under Michigan law, "[u]pon the discovery of the basis for rescission, a plaintiff must seasonably assert such rescission, tender back what he has received, and demand repayment."  Id. at *8.  The court granted FedEx's summary judgment motion because (1) FedEx had not waived the plaintiffs' duty to tender back the consideration received, and (2) the plaintiffs waived their rescission claim by continuing to perform under the contract after discovering that they were being inappropriately treated as employees instead of independent contractors, and thus they did not "seasonably assert" their rescission rights.  Id. at *12.

Plaintiffs in the two cases here fail to mention this highly relevant and persuasive authority.  Instead, plaintiffs argue that when a contract is void as against public policy, instead of voidable by reason of fraud, mistake, or misrepresentation, the promptness requirement does not apply because there is no "election" to be made.  I reject this argument.

Plaintiffs rely on a single Oregon case from 1928 and fail to mention other Oregon cases which do not support their argument.  They also ignore that the other federal district court cases discussed above addressed claims alleging that the contract was void from its inception as violative of public policy, but nonetheless applied the "promptness" requirement under the law of three different states.

In Pennicard v. Coe, 124 Or. 423, 623 P. 920 (1928), the case plaintiffs cite, the plaintiff sought to rescind a contract for the purchase of securities because the contract violated Oregon statutes regulating the sale of securities.  Id. at 430, 623 P. at 922.  The court agreed with the plaintiff that the contract was void for being in violation of the statutes.  Id. at 433, 623 P. at 923.

9 - OPINION & ORDER

The defendant argued that the plaintiff was not entitled to rescission because the plaintiff had "ratified the sale of the securities with knowledge of the alleged fraud[.]"  Id.  The court rejected that argument for two reasons.  First, the court determined there was no testimony in the record to show that the plaintiff committed any act intended to ratify the unlawful acts of the defendant.  Id.  Second, the court stated that "a contract which is unlawful under existing laws cannot be ratified."  Id. at 434, 263 P. at 923.  The court said:

> "It is a general rule of law that a contract made in violation of a statute is void,
> and that when a plaintiff cannot establish his cause of action without relying upon
> an illegal contract he cannot recover.  Consequently, a contract which is in reality
> illegal cannot, properly speaking, be ratified."

Id. (quoting 2 Elliott on Contracts § 686).

I do not quarrel with the premise that if a contract is illegal and thus is void rather than voidable, there is no "election" by the injured party whether to affirm or disaffirm the contract because an illegal contract cannot be ratified.  But, this is as far as Pennicard goes.  The case does not address the issue of whether a party seeking to rescind a void contract has the duty to act promptly upon discovering the facts allowing for rescission.

Moreover, while I found no Oregon cases citing to Pennicard for the proposition relied on by plaintiffs, there are subsequent Oregon cases suggesting that promptness is in fact required when seeking rescission of a void contract.  In a 1994 case, the plaintiff sued to rescind a contingent fee agreement between the plaintiff and attorneys who had settled a personal injury case on the plaintiff's behalf.  Powell v. Goff, 126 Or. App. 194, 197, 868 P.2d 26, 28 (1994).  The trial court found that the fee agreement was unconscionable.  Id.  The question on appeal was whether the plaintiff had waived his right to rescind the unconscionable contract by waiting

10 - OPINION & ORDER

too long to seek rescission. The court ruled that the plaintiff's claim was waived because he waited several years after learning of the facts that gave him a right to rescind before bringing his claim and continued to accept the benefits that he obtained from the work that the defendants had performed under the fee agreement. Id. at 199, 868 P.2d at 28-29.

Although the Powell court did not expressly state that the promptness rule applies to unconscionable, and thus void, contracts, the outcome makes clear that the obligation to promptly rescind exists in that context. Powell undermines plaintiffs' reliance on Pennicard.

In a 2002 case, the court discussed the promptness rule in the context of an illegal contract. Mount Joseph Cattle Co. v. Makin Farms, Inc., 180 Or. App. 27, 42 P.3d 331 (2002). There, the trial court found that the lease agreement at issue was illegal and that the defendant, the party seeking rescission, knew of the illegality before entering into the lease and thus, was not entitled to seek rescission. Id. at 31, 42 P.3d at 332. On appeal, the defendant did not challenge the contract's illegality, but argued that there were unresolved issues regarding what facts were known by whom, and thus, the defendant's counterclaims were improperly resolved on summary judgment. The appellate court noted that the plaintiff, in opposition to the defendant's rescission claim, argued that the defendant had waived its right to rescind by failing to complain about the lease agreement's fraud earlier than it had and attempting to disaffirm the contract only after the plaintiff sued the defendant in 1997. The court rejected the plaintiff's argument not on the merits, but because there was a jury question as to when the defendant knew all of the facts relevant to the counterclaim. Id. at 35, 42 P.3d at 335. The court explained that if the defendant did not know all of the facts relevant to a possible misrepresentation claim when it entered into the agreement, then its doing so could not have amounted to a waiver of any future misrepresentation

claims.  Id.

Importantly, the court did not state that there was no duty to act promptly when rescinding an illegal contract.  Instead, it entertained the argument that even with an illegal contract, there is an obligation to promptly rescind.  The only reason the court did not address the merits of the argument was because it did not have undisputed facts allowing it to conclude that the defendant had waited too long.

Plaintiffs cite, and I have found, no cases holding that the prompt notification duty is limited to voidable contracts which offer the injured party to right to affirm or disaffirm the contract.  When the law requires the injured party to rescind promptly in order to prevent unnecessary harm to the opposing party caused by the injured party's continuing performance of the contract, e.g., Eivers, 100 Or. at 206-07, 197 P. at 267-68, it makes no difference whether the party is injured by a contract voidable due to fraud, misrepresentation, or mistake, or by a contract void as against public policy.  That in one instance the injured party has the option to rescind and in the other instance rescission may be the sole remedy makes no difference to the fact that continuing to perform a contract subject to rescission could cause harm to the other party.  Similarly, if the law requires the injured party to rescind promptly in order to prevent the injured party from retaining the fruits of the contract by continuing to perform it after that party knows of the basis for seeking rescission, Scott v. Walton, 32 Or. 460, 464, 52 P. 180, 182 (1898), it makes no difference that a contract was void at its inception instead of voidable.

I agree with defendant that a finding that a contract is void is just one of several bases which allow a trial court, in its discretion, to determine whether the equitable remedy of rescission is appropriate and that acting with reasonable promptness is a prerequisite for a

12 - OPINION & ORDER

rescission claim, regardless of whether the contract at issue is void as being against public policy or is voidable because it was based on fraud, misrepresentation, or mistake.

The relevant inquiry in assessing promptness is "whether plaintiff acted promptly to rescind after obtaining knowledge of the <u>facts</u> constituting the grounds for rescission, not whether plaintiff acted promptly to rescind after obtaining knowledge that he could bring a legal action on those grounds." <u>Powell</u>, 126 Or. App. at 199, 868 P.2d at 28. While the facts in each case are assessed independently, courts generally conclude that fairly short periods of time, such as a few months, are reasonable, and that longer periods of time are unreasonable. <u>E.g.</u>, <u>First W. Mortg.</u>, 260 Or. at 202, 488 P.2d at 453 (delay of just over one year unreasonable); <u>Eivers</u>, 100 Or. at 205-06, 197 P. at 266 (delay of several weeks reasonable); <u>Powell</u>, 126 Or. App. at 199, 868 P.2d at 28 (delay of eight years unreasonable); <u>Gearhart</u>, 74 Or. App. at 101, 701 P.2d at 466 (delay from March to July not unreasonable especially when evidence showed the party consulted an attorney in April and attempted to informally resolve the dispute with the other contracting party in May).

Plaintiffs contend that they did not know the basis of their rescission claims when they signed the OAs with defendant. They also argue that there is no evidence that any of them understood, before filing their respective lawsuits, that the OAs were void on public policy grounds. As to the second of these arguments, <u>Powell</u> makes clear that it is possession of <u>facts</u>, not the legal implications of those facts, that is relevant for determining whether plaintiffs acted promptly. As to the first argument, the facts do not support plaintiffs.

It is undisputed that each plaintiff was familiar with the terms of the OA at the inception of his relationship with defendant. <u>E.g.</u>, Ex. H to Brubaker Dec. at p. 5 (Slayman OA) (signature

13 - OPINION & ORDER

acknowledging that he had read and fully understood provisions of the OA before executing it);
Ex. J to Wagner Dec. at p. 163 (Brinker Depo.) (before signing, asked for a copy of the OA, read
through it, and possessed it for at least twenty-four hours).  Many of the facts plaintiffs rely on to
establish defendant's control over the manner and method of their performance involve aspects of
the job governed by a provision in the OA.  E.g., Ex. A to Wagner Dec. at §§ 1.10(e), 1.12, 1.5
(Slayman OA) (provisions addressing the driver appearance/uniform standards and the vehicle
appearance standards).

Deposition testimony indicates that soon after becoming a driver, each plaintiff believed
that the OA, despite its express terms, did not give the driver the control he expected as an
independent contractor.  E.g., Ex. A to Brubaker Dec. at pp. 88-90 (Slayman Depo.) (was told
within four months of starting that he had to wear black tennis shoes instead of white); Ex. B to
Brubaker Dec. at pp. 23-24, 65-66 (McHenry Depo.) (stating that management demanded that he
act like an employee; forced do to work he did not want to do); Ex. E to Brubaker Dec. at p. 56
(Spicer Depo.) (came to conclusion he was not being treated as an independent contractor "[a]fter
about the first week" because of the "[l]ack of control over my own business").

The evidence shows that soon after beginning to drive for defendant, plaintiffs realized
that the level of control exerted by defendant was inconsistent with an independent contractor
relationship.  Even if six months is added to each plaintiff's start date, the evidence shows that
plaintiffs waited between 1.5 and 3.5 years to bring their rescission claims:

| Plaintiff | Start Date + Six Months | End Date | Rescission Claim Filed | Time Between Start Date + Six Months & Filing of Claim |
|---|---|---|---|---|
| Slayman | May 2002 | 2003 | January 9, 2006 (Amended Compl.) | more than 3.5 years |
| McHenry | November 2002 | June 2005 | April 11, 2006 (named as plaintiff in Second Am Compl.) | just under 3.5 years |
| Brinker | April 2004 | February 2006 | December 1, 2006 (named as plaintiff in Third Am. Compl.) | more than 2.5 years |
| Leighter | December 2002 | 2007 | June 1, 2007 | 4.5 years |
| Spicer | October 2005 | June 2007 | June 1, 2007 | more than 1.5 years |

Each period of time is unreasonably long. Plaintiffs' rescission claims are barred by their failure to assert them promptly upon learning of the relevant facts constituting grounds for rescission.

///

///

///

///

///

///

///

15 - OPINION & ORDER

CONCLUSION

Defendant's motion for summary judgment [37] is granted.  Plaintiffs' motion for partial

summary judgment [40] is denied as moot.

IT IS SO ORDERED.

Dated this __25th__ day of ____May____, 2012

_/s/ Marco A. Hernandez_____
Marco A. Hernandez
United States District Judge